E-FILED
Thursday, 11 September, 2014 02:03:34 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DITRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| MELISSA MCDONOUGH,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 4:13-cv-04029 |

## Order and Opinion

Before the Court are cross-motions for summary judgment (D. 14; D. 21) on Ms. McDonough's claim for Social Security Disability benefits and Supplemental Security Income. For the reasons set forth below, this Court AFFIRMS the decision of the Commissioner to deny Ms. McDonough benefits.

**I**

In March 2010, Ms. McDonough filed for disability insurance benefits and supplemental security income alleging disability since May 2007; both of these applications were denied initially and upon reconsideration (D. 9 at ECF p. 33). In February 2012, Ms. McDonough and an impartial vocational expert appeared at a video hearing before the ALJ. Id. The ALJ found her not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act (D. 9 at ECF pp. 33-47). The Appeals Council denied her request for review in March 2013 (D. 9 at ECF pp. 6-13), making the hearing decision the final decision of the Commissioner. 20 C.F.R. § 404.955, 20 CFR § 404.981, 20 CFR §416.1455, 20 CFR §416.1481. This appeal followed.

1

At the time of Ms. McDonough's alleged onset on February 9, 2007, she was 39 years old, single, and lived alone with her two children. By the time of her hearing before the ALJ, those children were ages 22 and 20 and no longer living with her. (D. 9 at ECF p. 201). Up until early 2004, she had been employed for over five years as a cashier at Walmart. (D. 9 at ECF p. 220). She was, however terminated from that job for theft. (D. 9 at ECF p. 42; D. 9 at ECF p. 60). After her termination, she did not seek other employment because she was able to live off of her children's income from their child support. (D. 9 at ECF p. 202). However, as her oldest child neared age 18, she became concerned about her income given the drop in child support which would then occur. Id.

Regarding her severe impairments, the ALJ concluded that Ms. McDonough had the following: "[D]isorder of the cervical spine with upper extremity numbness, osteoarthritis, degenerative changes of the left foot, asthma, obesity, depression/bipolar disorder, and anxiety/obsessive-compulsive disorder (20 CFR 404.1520(c) and 20 CFR 416.920(c))." (D. 9 at ECF p. 35). Notwithstanding these "severe impairments," the ALJ determined that the Claimant "has not demonstrated that she lacks the residual functional capacity to perform light work as defined, function by function, in 20 CFR 404.1567(b) and 20 CFR 416.967(b). (D. 9 at ECF p. 38). Specifically, the ALJ made the following RFC determination:

> [T]his limitation to light work is because of all her impairments and symptoms combined - disorder of the cervical spine with upper extremity numbness, osteoarthritis, degenerative changes of the left foot, asthma, obesity and all pain complaints. Because of some numbness in her upper extremities, medication side-effects, obesity, and complaints of pain, she should not climb ladders, ropes, or scaffolds or work at unprotected heights. Because of asthma, she should not work in a concentrated exposure to respiratory irritants. During exacerbation of her mental symptoms from her depression/bipolar and anxiety/OCD disorders, she may have

2

moderate limitations in (1) concentration, persistence and pace when attempting complex or detailed job processes, therefore she is limited to jobs that do not require complex or detailed job processes; and (2) social functioning, therefore she is limited to jobs that do not require interaction with the public or more than occasional interaction with co-workers and supervisors.

(D. 9 at ECF p. 38). Reading Ms. McDonough's *pro se* "Motion for Summary Judgment", it is this RFC finding which she challenges in this Court. Although she lists a variety of legal principles applicable to review of an ALJ's determination, she essentially argues that the ALJ's RFC finding was not supported by substantial evidence. (D. 14).

Pursuant to 42 USC § 405(g), the Commissioner's findings must be sustained by the Court if they are supported by "substantial evidence." 42 USC 405(g). The entire administrative record must be reviewed for substantial evidence which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v Astrue*, 478 F3d 836, 841 (7th Cir 2007), quoting *Richardson v Perales*, 402 US 389, 401 (1971). The Court may not substitute its judgment for that of the ALJ. *Schmidt v Apfel*, 201 F3d 970, 972 (7th Cir 2000). The regulations provide that the final responsibility for determining a Claimant's RFC is reserved to the Commissioner and that "the RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical evidence and other evidence." 20 CFR § 404.1527.1
However, "an ALJ need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion." *Denton v Astrue*, 596 F3d 419, 425 (7th Cir 2010). The ALJ built such a bridge in this case.

The heart of the ALJ's decision is her statement that:

The claimant does have impairments that can be anticipated to produce a certain amount of symptoms, but the record does not demonstrate that she has significantly limited physical and mental functioning to the extent she would be unable to perform and sustain work.

(D. 9 at ECF p. 43). Substantial evidence supports this conclusion.

## II

### A

Looking first to the Claimant's physical impairments, the objective medical evidence indicates that the Claimant has mild to moderate spinal stenosis (D. 9-1 at ECF p. 11); osteoarthritis (D. 9-1 at ECF p. 169); controlled asthma (D. 9-1 at ECF p. 57); mild obesity (D. 9-1 at ECF p. 200); and some mild degenerative changes in her left foot. (D. 9-1 at ECF p. 171). In her testimony, she claimed that these conditions caused her constant pain and resulted in her being unable to "sit or stand too long a period of time or walk because it bothers my foot." (D. 9 at ECF p. 62).

Inconsistent with this claim and as the ALJ noted are the facts that during the period of the Claimant's alleged disability, she attended and completed her degree at Black Hawk College (D. 9 at ECF p. 37; D. 9 at ECF p. 234); was able to ride her bike five times a week for 20 minutes (D. 9 at ECF p. 37; D. 9-1 at ECF p. 169); lived alone; did her own grocery shopping; drove her car; cooked for herself; cleaned up for herself; and maintained her personal hygiene. (D. 9 at ECF p. 39).

Additionally, the limitations noted by her various physicians are quite different from that testified to by the Claimant. For example, at her May 2007 consultative exam, she had a full range of motion with pain; no clubbing of her extremities; could get on and off the exam table without difficult; could walk greater than 50 feet without support; had 5/5 grip strength in both hands;

4

normal ability to grasp and manipulate objects; unlimited range of motion of the shoulders, elbows, wrists, hips, knees, ankles, and lumbar spine; symmetric deep tendon reflexes; and normal sensation. (D. 9-1 at ECF pp. 16-20). There is no other objective medical evidence in the record inconsistent with these findings.

Finally, as the ALJ noted, her treatment history for physical ailments is inconsistent with the level of impairment claimed by Ms. McDonough. Despite her alleged continuing, debilitating pain since 2007, the record reflects that she sought treatment for her neck pain once in 2010 and had one office visit for her hip pain in July of 2011. The ALJ rightly concluded that the Claimant's failure to seek medical attention for her alleged physical conditions is inconsistent with her claimed level of impairment. (D. 9 at ECF p. 44).

Simply put, apart from the Claimant's subjective complaints, the evidence in the record does not support a finding of disability; rather, it supports the ALJ's RFC determination.

## B

Looking to the Claimant's mental impairments, the ALJ found Ms. McDonough to suffer from depression/bipolar disorder, and anxiety/obsessive-compulsive disorder. (D. 9 at ECF p. 35). The ALJ accounted for these conditions in the RFC, concluding that Ms. McDonough "may have limitations in (1) concentration, persistence and pace when attempting complex or detailed job processes, therefore she is limited to jobs that do not require complex or detailed job processes; and (2) social functioning, therefore she is limited to jobs that do not require interaction with the public or more than occupational interaction with co-workers and supervisors." (D. 9 at ECF p. 38). Substantial evidence supports this finding as well.

In assessing Ms. McDonough's mental RFC, the ALJ explained her reliance on the medical evidence and non-medical evidence that showed the Claimant

5

had the capacity to work despite her mental impairments. (D. 9 at ECF pp. 38-45). For example, the ALJ considered her mental status assessments in determining her RFC. Dr. Singley in May of 2007 noted that Ms. McDonough's attention, concentration, and immediate memory tested normal, and that she reported going to school, working on assignments, watching television, and doing some computer work. (D. 9 at ECF pp. 40; D. 9-1 at ECF pp. 17-29). The ALJ also noted the unremarkable mental status assessments by Dr. Galbreath and the Robert Young Center in July 2009, January 2010, July 2010, and July 2011. (D. 9 at ECF pp. 40-42; D. 9-1 at ECF pp. 76, 82, 90, 139). Finally, Dr. Shan in January 2012 noted that the Claimant was cooperative and had intact concentration and memory. (D. 9 at ECF p. 43; D. 9-1 at ECF p. 200).

Similar to the ALJ's finding regarding the lack of medical treatment sought for her claimed physical impairments, the ALJ also found that Ms. McDonough had not received the type of medical treatment for her mental disorders one would expect for a totally disabled individual. (D. 9 at ECF p. 44). The Claimant was never hospitalized for a psychiatric condition and her mental issues were treated with psychotropic medication. (D. 9 at ECF p. 44). Although she did report instances when some of her symptoms worsened at times, these symptoms generally improved with changes in her medication (D. 9 at ECF p. 44; D. 9-1 at ECF pp. 67, 84), the ALJ noting that the Claimant repeatedly reported at medical visits that she was doing well and that her psychotropic medication was working well. (D. 9 at ECF p. 44; D. 9-1 at ECF pp. 68, 87-88, 100, 102, 126). Ms. McDonough also had no complaints for her psychiatrist in June and December 2007, and reported she was doing well in January 2009, January 2010, March 2010, and June 2010. (D. 9 at ECF p. 44; D. 9-1 at ECF pp. 67-68, 84, 100, 102, 126).

The one piece in the record which could arguably be considered inconsistent with the ALJ's mental RFC determination was Dr. Singley's opinions

6

regarding the severity of Ms. McDonough's mental impairments, his assignment of a GAF score of 45 to her, and his belief that her symptoms would continue into the foreseeable future. ([D. 9-1 at ECF pp. 12-15](D. 9-1 at ECF pp. 12-15)). However, the ALJ, while acknowledging Dr. Singley's opinions, thoroughly explained why she was not according those opinions weight. ([D. 9 at ECF pp. 44-45](D. 9 at ECF pp. 44-45)). Those reasons included 1) that the opinions were based upon the Claimant's subjective complaints without any verification; 2) the Claimant's subjective complaints were made in her pursuit of disability benefits; 3) the GAF score was lower than that given to Ms. McDonough by her treating providers; and 4) in the two years after Dr. Singley rendered his opinion, the Claimant successfully completed two years of college which clearly undermined his opinions. Id.

Having properly explained why the opinions of Dr. Singley were not credited, the remaining objective medical evidence already discussed supported the mental RFC as found by the ALJ, and, accordingly, that finding was supported by substantial evidence.

## C

Finally, the ALJ properly evaluated Ms. McDonough's credibility. As noted above, with the exception of Dr. Singley's opinion which the ALJ properly discredited, the only evidence in the record to support a finding of disability are the subjective complaints of the Claimant. Not only does the objective evidence fail to support a finding of disability to the degree to which Ms. McDonough claimed, but, as the ALJ found, there was a solid basis for doubting her credibility.

The ALJ's credibility determination is accorded great weight and deference because the ALJ has the duty of observing a witness's demeanor and credibility. "An ALJ is in the best position to determine the witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility

determination unless it is "'patently wrong.'" *Skarbek v Barnhart*, 30 F3d 500, 504 (7th Cir 2004). There is no basis for this Court to make such a finding.

As discussed at length above, the ALJ considered the objective medical evidence in assessing Ms. McDonough's credibility--the regulations requiring an ALJ to consider the lack of consistency between the objective medical evidence and a Claimant's allegations when determining credibility. 20 CFR § 404.1529(c). The ALJ reasonably determined that the medical findings in the record were inconsistent with her allegations of the severity of both her physical and mental impairments. (D. 9 at ECF pp. 39-44). Likewise, her daily activities, along with her successfully completed two years of college after the alleged onset of her disability are also inconsistent with her alleged level of impairment.

Lastly, the ALJ noted an occasion where the Claimant actively sought a specific medical determination by her treatment provider for non-medical purposes. (D. 9 at ECF p. 42). Specifically, in July of 2011, Dr. Dewat Chaudhry reported the following:

> The patient is seen for an administrative reason. Her daughter is moving out of her house so she is faced with the situation where she would have to move to a smaller apartment. The patient feels that she is claustrophobic and would have difficulty being in smaller surroundings. She is wondering if I could give her a note saying that she has to live in larger quarters which met with the current one. I advised the patient that I had no ability to make that kind of recommendation.

(D. 9-1 at ECF p. 151). Then, in November of 2011, the Claimant asked Dr. Chauhdry to complete a questionnaire required from Moline Township to the effect that she was unable to work. Dr. Chaudhry expressly declined to complete the questionnaire in that manner, noting that he could not "justify that she could not work due to her anxiety" and that he felt "that working will be good for her." (D. 9-1 at ECF p. 199). The Claimant's conduct on these two occasions supports

an inference that her subjective claims of impairment lack credibility, especially in light of her own statement that, after being terminated from her prior employment for theft and thereafter living off her children's child support, she sought disability only when she became concerned about the loss of that income because her oldest child would soon reach age 18, resulting in a loss of child support income. ([D. 9 at ECF p. 202](#)).

## III

For the reasons stated above, the ALJ's RFC determination was supported by substantial evidence. Ms. McDonough did not make a challenge to the ALJ's other findings. Nevertheless, the Court has conducted its own independent review of those other findings and the record in this case. Those unchallenged findings are supported by substantial evidence as well.  Accordingly, the decision of the Commission is AFFIRMED. This matter is now TERMINATED.

Entered on September 10, 2014

s/Jonathan E. Hawley  
U.S. MAGISTRATE JUDGE